UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:20-cv-21900

SANDRA BOGOVICH,

    Plaintiff,

v.

NCL (BAHAMAS) LTD.,
a Bermuda company d/b/a
NORWEGIAN CRUISE LINE,

    Defendants.
_____/

**COMPLAINT**
**AND DEMAND FOR TRIAL BY JURY**

Plaintiffs, SANDRA BOGOVICH, by and through undersigned counsel, hereby sues Defendant, NCL (BAHAMAS) LTD., a Bermuda company d/b/a NORWEGIAN CRUISE LINE (hereinafter, "NCL") and alleges:

**THE PARTIES AND JURISDICTION**

1. This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

2. Plaintiff, SANDRA BOGOVICH, is sui juris, and is a resident of New Jersey.

3. Plaintiff was a lawful passenger aboard the cruise ship, the *Norwegian Escape,* owned and operated by Defendant, NCL.

4. NCL is a Bermuda company with its principal place of business and base of operations located in Miami, Florida.

5. This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as this is a civil action in which the matter in controversy exceeds the sum or value of $75,000,

exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state.

6. This Court also has Admiralty subject matter jurisdiction pursuant to 28 U.S.C. § 1333 as this case involves maritime torts. The type of incident and injuries suffered by Plaintiffs had the potential to impact maritime commerce as shore side excursions are a part of the cruise experience and sold by cruise lines aboard their cruise ships.

7. This action is being filed in this Court pursuant to the terms and conditions in the Passenger Contract Ticket issued by Defendant, NCL.

8. This Court has personal jurisdiction over NCL because:

   A. NCL's principal place of business is located within Miami-Dade County, Florida;

   B. NCL conducts substantial business within the State of Florida, including but not limited to operating cruises from Miami, Tampa, Cape Canaveral, Ft. Lauderdale, and Jacksonville, markets cruise vacations to Floridians, contracts with several Florida companies to provision its cruises ship while in Florida ports, and employs several thousand Floridians to work at its Miami headquarters; and/or

   C. NCL operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

   D. NCL had an office or agency in this state and/or county; and/or

   E. NCL engaged in substantial activity within this state; and/or

   F. NCL committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

      G. At all times material thereto, NCL owned, operated, managed, maintained and/or controlled the vessel, the *Dawn*.

9. Each year, many U.S. passengers travel to Saint John, New Brunswick, Canada aboard Defendant's ships .

10. The "Saint John River Cruise" shore excursion in Saint John, New Brunswick, Canada is sold by Defendant, NCL, to U.S. passengers, such as Plaintiff.

11. When passengers, such as Plaintiff, board NCL Cruise Ships, NCL offers, recommends, and markets the subject shore excursion in Saint John in various places around the ship. Alternatively, NCL allows passengers, such as Plaintiff, to book and pay for the subject shore excursion at the ship's Shore Excursion Desk. There, passengers can talk to NCL crewmembers, trained by NCL to answers questions and provide information about NCL's shore excursions, and to assist passengers in purchasing the shore excursions.

## GENERAL ALLEGATIONS

12. At all times material hereto, Defendant, NCL, markets the Zip Line excursion, the "Saint John River Cruise" through its website, print material, onboard announcements, and onboard television programming.

13. Cruise passengers cannot purchase shore excursions, including the subject shore excursion, unless they have a reservation number from Defendant, NCL, and are confirmed for their cruise. While aboard the ship, cruise passengers have three ways to book excursions: 1) visit the shore excursion desk; 2) fill out the order form in the guest's stateroom; and 3) use the interactive TV system available on most ships.

14. As the top reasons to book NCL's shore excursions, Defendant, NCL, states its guests are guaranteed priority departure in port, are provided flexible cancellation policies, are

guaranteed return to ship and most importantly, the excursions are planned by insured partners who adhere to the highest safety standards in the industry.

15. Plaintiff booked a cruise aboard the *Norwegian Escape* with Defendant, NCL.

16. After booking his cruise, Defendant, NCL, offered Plaintiff different shore excursions to purchase. One of those excursions was the subject excursion, the Saint John River Cruise.

17. The fee for the excursion was charged to the Plaintiff and collected from the Plaintiff exclusively by Defendant, NCL.

18. Based upon the advertising and the fact that he was purchasing it through Defendant, NCL, Plaintiff believed that the excursion was operated by Defendant, NCL. Moreover, Plaintifs trusted that being an NCL excursion, it would adhere to the highest safety standards in the industry.

19. To all outward appearances, Defendant, NCL, was the operator of the excursion, and any representations contained in any of the fine print of its literature never expressly advised Plaintiffs that it was not operating the excursion or advised Plaintiff of the identity of the excursion operator to allow them to inquire about the operator's safety measures and standards. See Shore Excursion Ticket and Confirmation attached as Exhibit "A."

20. Plaintiff would not have participated in the subject shore excursion had she known the excursion was not operated by Defendant, NCL.

21. On September 13, 2019, the *Norwegian Escape* called on Saint John, New Brunswick.

22. Plaintiff departed the ship for the NCL sponsored tour, the Saint John River Cruise (the "subject shore excursion").

23. At the excursion location, Plaintiff listened attentively to the safety briefing and followed all directions carefully.

24. At no time during the safety briefing was Plaintiff advised or informed by the excursion workers to watch her step as she boarded the ramp from the pier. If such a warning had been given, Plaintiff would have been more cautious as she boarded the excursion boat.

25. At no time during the safety briefing was Plaintiff advised or informed by the excursion workers that the boarding ramp was not properly attached to the excursion boat and/or the pier. If such a warning had been given, Plaintiff would not have attempted to step on the ramp.

26. At no time during the safety briefing was Plaintiff advised or informed by the excursion workers that the boarding ramp moved and/or separated from the pier while in use. If such a warning had been given, Plaintiff would not have attempted to step on the ramp.

27. At no time during the safety briefing did the excursion workers test and/or inspect the boarding ramp to ensure that the gap between the ramp and the pier did not present a danger to unsuspecting tour participants. If the excursion workers had conducted a test and/or inspected the ramp prior to allowing Plaintiff to board the boat, the subject incident could have been avoided.

28. At no time during the boarding process did the excursion workers help tour participants in boarding the excursion boat despite knowing that the ramp was not properly attached to the boat and/or pier, that the movement of the ship created a gap between the boat ramp and the pier, that the ramp lacked safety features such as a handrail, and that tour participants required assistance in boarding the ramp to avoid incidents such as the one that occurred. If the excursion workers had helped Plaintiff board the excursion boat by assisting her as she attempted to step on the boat ramp from the pier, the subject incident could have been avoided.

29. As Plaintiff stepped on the boarding ramp from the pier, her foot got caught in a

gap between the ramp and the pier which caused Plaintiff to fall forward and land on her left arm. As a result of the incident, Plaintiff fractured her left humerus and required surgery.

30. Defendant, NCL, caused this incident by failing to properly screen, train, and monitor the tour operator and the excursion workers, and by failing to have procedures and safeguards in place, like handrails to prevent falls like the one Plaintiff suffered, employees stationed at the entrance of the ramp, and inspections of the ramp before tour participants attempt to board the ramp.

31. Defendant, NCL, never identified a third-party (if any) as the owner and operator of the excursion. *See* Shore Excursion Ticket attached as Exhibit A.

32. Defendant, NCL, obtains payment for the excursions online and onboard the cruise through the guests' account.

33. At all times material hereto, Defendant, NCL, participated in the income and losses generated by the operation of the subject excursion.

34. Defendant, NCL, exercises or exercised control over the subject excursion in its requirements for its operation, insurance and safety.

35. Defendant, NCL, has or had control over the arrangement, marketing and sales of the subject excursion.

36. Even if the excursion operator were an independent contractor, NCL is not relieved of its duty to verify that its representations made in its literature and elsewhere about its excursion operators are true, that is, that the insured partners adhere to the highest safety standards in the industry.

37. All conditions precedent for filing and maintaining this action have been fulfilled, performed, waived, or do not apply.

## COUNT I
## NEGLIGENCE AGAINST DEFENDANT, NCL

Plaintiffs re-allege all allegations pled in paragraphs 1 through 37 above as if alleged fully herein.

38.     Defendant, NCL, and/or its agents, servants, joint venturers, and/or employees owed Plaintiff a duty to warn of dangers of which the carrier knew or reasonably should have known. This duty extends beyond the port to places where the passengers are invited to, or may reasonably be expected to, visit.

39.     Defendant, NCL advertised, marketed and sold the subject excursion to Plaintiff and thus should have expected Plaintiff to visit it and participate in it.

40.     The dangerous and/or risk-creating conditions of the subject excursion include, but are not limited to:

   A. The lack of maintenance of the ramp;

   B. The lack of inspection of the ramp;

   C. That the ramp it is not equipped with handrails to prevent falls;

   D. That the excursion workers were not adequately trained or competent to monitor the boarding process before allowing participants to enter the ramp;

   E. That the excursion workers were not adequately trained or competent to inspect the ramp before every ride;

   F. That the subject excursion did not have adequate first aid and/or other medical supplies to treat persons injured on the excursion; and

   G. That the response time for addressing and/or treating persons injured on excursion was very slow.

41.     The dangerous conditions of the subject excursion were not open and obvious to

Plaintiff.

42. Defendant, NCL:

A. Had actual knowledge of the dangerous and/or risk-creating conditions aboard the subject excursion:

   a) Upon information and belief, Defendant, NCL, visited and participated in the excursion as part of its approval process for selecting the subject excursion to be offered to its passengers and thus knew or should have known of the dangerous, risk-creating, and/or defective conditions of the boarding process;

   b) Upon information and belief, Defendant, NCL, received complaints of incidents wherein people were injured by the lack of supervision on the subject excursion,

   c) Received guest feedback of the tour in comment forms from previous passengers about the dangerous conditions aboard the subject excursion; and/or

   d) Received complaints from previous passengers about the dangerous conditions aboard the subject excursion; and/or,

   e) Was told by its passenger(s) that they suffered injuries during the subject excursion as a result of the operator's negligent operation of same; and/or,

   f) Reviewed complaints of prior passengers that posted on the internet discussing the unreasonably hazardous conditions on the subject excursion.

B. Had constructive knowledge of the unreasonably dangerous and/or risk-creating conditions as they:

    a) Existed for a sufficient length of time so that NCL should have known of them by the exercise of ordinary care when visiting the site to ensure it is safe for its passengers; and/or,

    b) Previous incident(s) such as Plaintiffs' occurred, and or complaint(s) were made, (and although only one incident or complaint is needed to impute notice, they also occurred frequently) so as to impute notice upon NCL;

    c) Created the dangerous and/or risk-creating conditions;

    d) Caused Plaintiffs' injuries through an affirmative act(s), rather than solely through premises liability, for which notice is not required.

43. Defendant, NCL, breached its duty to warn Plaintiffs and was negligent by:

  A. Failing to provide adequate warnings of the dangerous and/or risk-creating conditions of the subject excursion;

  B. Failing to warn the Plaintiff and other cruise ship passengers that Defendant, NCL, does not inspect and/or maintain the subject excursion;

  C. Failing to advise the Plaintiffs and other cruise ship passengers that Defendant, NCL, does not verify that boarding ramps used for the subject excursion are reasonably safe and/or inspected;

  D. Failing to warn the Plaintiff and other cruise ship passengers that the ramp could move and/or separate from the pier while in use;

  E. Failing to warn the Plaintiff and other cruise ship passengers that the excursion workers were not adequately trained or competent to monitor the subject excursion before allowing participants to board the ramp;

  F. Failing to warn the Plaintiff and other cruise ship passengers that the excursion

    workers were not adequately trained or competent to inspect the ramp before allowing participants to board the ramp;

G. Failing to warn passengers that the excursion workers are not adequately trained or competent to handle emergency situations such as Plaintiff's incident;

H. Failing to warn passengers that the tour operator did not have adequate first aid and/or medical supplies to treat persons injured on the excursion; and

I. Failing to warn that the response time for addressing and/or treating persons injured on the excursion would be very slow.

44. As a direct and proximate result of the breach of the duty alleged above, Plaintiff, SANDRA BOGOVICH, suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, surgery, medical care and treatment and loss of earnings and loss of the ability to earn money. These losses are either permanent or continuing.

**WHEREFORE**, Plaintiff, SANDRA BOGOVICH, demands judgment against NCL for damages suffered as a result of the alleged accident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, hospitalization, medical treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs and prejudgment interest.

## COUNT II
## NEGLIGENT HIRING, RETENTION, TRAINING AND SUPERVISION

Plaintiff re-alleges all allegations pled in paragraphs 1 through 37 above as if alleged fully herein.

45. On the date of the subject incident,

46. Defendant, NCL, had a duty of reasonable care to hire, retain, train, and supervise the excursion operator, especially an excursion operator

47. Defendant, NCL, in this case, was negligent in the hiring, retention, training, and supervision of the excursion workers, by its actions and conduct including but not limited to the following:

> A. Failing to properly screen, investigate, interview, and otherwise hire employees or agents;
>
> B. Failing to periodically investigate and verify credentials of the excursion employees or agents;
>
> C. Failing to properly and reasonably train the excursion workers to inspect and maintain the boarding ramp in proper working condition;
>
> D. Failing to promulgate and enforce sufficient rules, regulations, policies, and procedures in regard to routine inspection and maintenance of the zip lines;
>
> E. Failing to properly monitor the boarding ramp to ensure the ramp was not unreasonably dangerous;
>
> F. Failing to monitor the excursion workers who are entrusted to supervise and/or assist tour participants board the excursion boat;
>
> G. Failing to otherwise reasonably and properly hire, retain, train and supervise the excursion operator.

48. As a direct and proximate result of the breach of the duty alleged above, Plaintiff, SANDRA BOGOVICH, suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, surgery,

medical care and treatment and loss of earnings and loss of the ability to earn money. These losses are either permanent or continuing.

**WHEREFORE**, Plaintiff, SANDRA BOGOVICH, demands judgment against NCL for damages suffered as a result of the alleged accident and injury including pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, hospitalization, medical treatment and lost earnings experienced in the past and to be experienced in the future together with all taxable court costs and prejudgment interest.

## DEMAND FOR JURY TRIAL

Plaintiff, SANDRA BOGOVICH, hereby demands trial by jury of all issues so triable of right.

DATED this 6th day of May 2020.

Respectfully submitted,

*/s/ Spencer M. Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Abby Hernández Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**Matthias Hayashi, Esq.**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:	(305) 441.0440
F:	(305) 441.0198
*Attorneys for Plaintiff*